IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARGIE GRIFFIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-3321 |
| | § | |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 16) and Defendant's Cross Motion for Summary Judgment (Document No. 17). Having considered the cross motions for summary judgment, each side's response to the other's motion (Document Nos. 18 & 20), the administrative record, the written decision of the Administrative Law Judge dated July 2, 2018, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this proceeding is REMANDED to the Commissioner for further proceedings.

---

[1] On May 26, 2020, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 15.

**I.   Introduction**

Plaintiff Margie Griffin ("Griffin") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits. Griffin claims in this appeal that: (1) "The ALJ erred in finding Plaintiff's mental impairments are not severe;" (2) "The ALJ failed to properly evaluate and weigh the medical opinions of record;" (3) "The ALJ erred in finding that Plaintiff's back impairments are not of listing level severity;" and (4) "The ALJ's residual functional capacity finding is not supported by substantial evidence." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's July 2, 2018, decision, that the decision comports with applicable law, and that the decision should be affirmed.

**II.   Procedural History**

On August 3, 2015, Griffin filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), claiming that she had been unable to work since September 30, 2014, as a result of a lumbar back injury, anxiety, depression and hypertension (Tr. 950-953; 978). The Social Security Administration denied the applications at the initial and reconsideration stages. After that, Griffin requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Gary J. Suttles, held a hearing on June 1, 2018, at which Griffin's claims were considered *de novo*. (Tr. 714-757). Thereafter, on July 2, 2018, the ALJ issued his decision finding Griffin not disabled. (Tr. 12-33).

Griffin sought review of the ALJ's adverse decision with the Appeals Council. The Appeals

Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On June 25, 2019, the Appeals Council found no basis for review (Tr. 1-5), and the ALJ's decision thus became final.

Griffin filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III.   Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues

de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**IV.     Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to

limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs

are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Griffin had not engaged in substantial gainful activity since September 30, 2014, her alleged onset date. At step two, the ALJ determined that Griffin's obesity, degenerative disc disease, and chronic obstructive pulmonary disease were severe impairments, but that her gastroesophageal reflux disease (GERD), vocal cord lesions, hypertension, depression, and anxiety were non-severe impairments. At step three, the ALJ determined that Griffin did not have an impairment or a combination of impairments that met or equaled a listed impairment, including Listings 1.04 (disorders of the spine) and 3.02 (chronic respiratory disorders). Prior to consideration of steps four and five, the ALJ determined that Griffin had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (lifting and or carrying 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of 4 hours (each) and sit for a total of 6 hours for a full 8-hour day). She has an unlimited capacity to push/pull and perform gross/fine dexterity except for occasional pushing or pulling with her lower extremities, bilaterally. The claimant can occasionally bend, stoop, crouch, crawl, balance, twist, and climb stairs. She cannot squat, run, or climb ladders, ropes, or scaffolds. The claimant can have occasional exposure to heights, dangerous machinery, and uneven surfaces. There is no severe mental impairment." (Tr. 22). At step four, the ALJ determined, based on the residual functional capacity (RFC) and the testimony of a vocational expert, that Griffin could not perform her past relevant work as a home health aide. (Tr. 31). The ALJ then concluded, at step five, using that same RFC and based on the testimony of a vocational expert, that Griffin could perform jobs such as mail

6

clerk, counter clerk, and parking lot attendant, and that she was, therefore, not disabled.

In this appeal, Griffin complains about the ALJ's severity assessment at step two relative to her anxiety and depression, the ALJ's consideration of the expert medical opinions in the record, the ALJ's step three determination that her back impairment did not meet a listing, and the ALJ's RFC determination. For the reasons set forth below, because the ALJ's step two determination is not supported by substantial evidence, and because the ALJ did not incorporate any mental limitations in the RFC he used at step five to find Griffin not disabled, remand for further consideration is warranted.

## V.  Discussion

In her applications for DIB and SSI, Griffin asserted that she was disabled as a result of a lumbar injury, anxiety and depression. Subsequent to the filing of her applications, Griffin was diagnosed with chronic obstructive pulmonary disease (COPD). All of those conditions were considered and evaluated by the ALJ at the hearing and in his July 2, 2018, decision. At issue in Griffin's first claim in this appeal is the ALJ's consideration of her anxiety and depression, both of which were found by the ALJ in his step two analysis to be non-severe impairments. According to Griffin, the ALJ did not use the correct severity standard in assessing her mental impairments, and did not "accommodate in any way for [her] mental impairments" in the RFC.

At step two, the claimant bears the burden of showing that she has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. The step two requirement that the claimant have a severe impairment is generally considered to be "a de minimis screening device to dispose of groundless claims." *Smolen*

*v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987)). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v.* Heckler, 745 F.2d 340, 341 (5th Cir. 1984)). Under the standard set forth in *Stone*, an impairment causing any interference with work ability, even minimal interference, is a severe impairment. *See Scroggins v. Astrue*, 598 F.Supp.2d 800, 805 (N.D.Tex.2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.").

Under the governing regulations, if a claimant does "not have a severe medically determinable physical or mental impairment ... or a combination of impairments that is severe ..., we will find that you are not disabled." 20 C.F.R. § 404.150(a)(4)(ii), 416.920(a)(4)(ii). But, because the regulations require a claimant to show only "a severe" impairment, that is, one severe impairment in order to avoid a denial of benefits at step two, the failure to find a particular impairment severe at step two is not reversible in and of itself as long as the ALJ finds that at least one other impairment is severe. However, even if an impairment is found non-severe at step two, the ALJ must still "consider the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [RFC]." 20 C.F.R. §§ 404.1545(e), 416.945(e); see also 20 C.F.R. § 404.1523; Social Security Ruling 96-8p, 1996 WL 374184, at *5; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

Here, in determining that Griffin's depression and anxiety were not severe, the ALJ wrote:

8

The claimant's medically determinable mental impairments of depression [ ] and anxiety, considered singly and in combination, do not cause more than minimal limitation on the claimant's ability to perform basic mental work activities and are therefore non-severe.

In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria.

The first functional area is understanding, remembering, or applying information. In this area, the claimant has a *mild* limitation. Notes from the claimant's October 2015 psychological consultative examination indicate that the claimant was able to complete the paperwork on her own (Exhibit 5F/1). She was unaware of current events, and her level of intelligence appeared to be below average (although it was not formally assessed) (Exhibit 5F/5). Her remote memory was fair, as she provided historical information. She was able to name the current and past president, but not the current governor. She was able to recall 2 of 4 words after a 5-minute delay and 2 of 4 words with the assistance of a cue. Her working memory was consistent with her immediate memory. Notes from her treating sources reflect that the claimant had linear, goal directed thinking and intact cognitive functioning (Exhibits 9F/2; 14F/119; and 21F/3).

The next functional area is interacting with others. In this area, the claimant has a *mild* limitation. As outlined above, notes from her October 2015, consultative exam indicate that the claimant maintained adequate eye contact, and that she did not have any expressive or receptive language difficulties (Exhibit 5F/4). However, she was noted to be tearful and had a dysphoric mood with a consistent affect (Exhibit 5F/5). Records from her treating sources indicate that despite her variable mood and affect (at times dysthymic/tearful and others euthymic), she was noted to have been pleasant/cooperative/forthcoming with normal and spontaneous speech (Exhibits 9F/2; 11F/6; 14F/119; and 21F/3).

The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has a *mild* limitation. As outlined above, notes from the October 2015 consultative exam indicate that the claimant's concentration was intact overall (Exhibit 5F/5). She was able to count from 20 to 1 backwards and by 5's to 100. She could do simple mental arithmetic consisting of addition, but not subtracting, multiplication, or division. The examiner noted that when asked math problems, the claimant indicated she needed paper and did not try. Notes from her treating source indicate that the claimant had fair attention and concentration (Exhibit 9F/2).

The fourth functional area is adapting or managing oneself. In this area, the claimant has *no* limitation. Notes from the claimant's October 2015 consultative exam

9

>indicate that the claimant reportedly stayed in her pajamas most of the day and stayed in her room and read. She showered 1-2 times daily (Exhibit 5F/3). She reported that her adult son did the grocery shopping and prepared her meals. She drove herself to the appointment, arrived on time, and was able to complete the paperwork on her own (exhibit 5F/1). Notes from her treating sources reflect that the claimant had fair abstract reasoning, insight, and judgment (Exhibits 9F/2; 14F/119; 21F/3). She also had good impulse control (Exhibit 21F/3).
>
>Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are non-severe (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(Tr. 18-19).

While the ALJ utilized the required technique set forth in the regulations for assessing the severity of mental impairments, *see* 20 C.F.R. § 404.1520a(c)(d), the ALJ's determination that Griffin had nothing more than mild limitations in the four areas of mental functioning (ability to understand, remember, or apply information; ability to interact with others; ability to concentrate, persist, or maintain pace; and ability to adapt or manage oneself) during the time period under consideration is not supported by substantial evidence. For a limitation to be considered "mild," a claimant's functioning must be only affected "slightly." For a limitation to be considered "moderate," a claimant's functioning must be "fair." For a limitation to be considered "marked," a claimant's functioning must be considered "seriously limited." *See* 20 C.F.R. Subpt. P, App. 1, 12.00E, F(2). Here, the evidence in the record does not support the ALJ's conclusion at step two that Griffin had only mild limitations in functioning during the period under consideration.

In February of 2014, Griffin was complaining about continued depression, and seeking a higher dose of Effexor (Tr. 1117-1120). In and around that time, she presented as nervous and anxious, but with normal behavior, normal judgment, and normal thought content (Tr. 1108-1116). In the latter part of 2014, around her onset date, Griffin began to complain of back pain (Tr. 1075,

1077, 1079, 1081, 1098-1103, 1094-1097). MRI results from March 2015 revealed: intraspinal synovial cyst at right L3-4 foramina; severe facet hypertrophy and disc bulge resulting in severe canal, foraminal and severe right lateral recess stenosis; contact suspected with descending bilateral L4 nerve roots, greater on right; posterior lateral protrusion at L4-5 with mild extraforaminal contact suspected in right nerve root (Tr. 1327-28); (1083-1093; 1230-1235; 1235-1250). That back pain was treated conservatively with medication, and later, in mid-2015, with epidural steroid injections (Tr. 1185-1187; 1194-1199; 1213-1216). In August 2015, Griffin was seen by a pain management specialist, who diagnosed her with "lumbar spinal stenosis and spondylosis of lumbar region," continued her on her current medications (Robaxin and Mobic) and recommended physical therapy (Tr. 1187-1193). Griffin's complaints of back pain were predominant in her medical records through September 2015 (1265-1271; 1329-1330).

On October 9, 2015, Sharon Swanson, Psy.D. conducted a clinical interview and mental status exam of Griffin (Tr. 1251-1256). Griffin reported at that evaluation that she had had depression and anxiety her whole life; that she had suicidal thoughts 10+ years ago which resulted in a psychiatric hospitalization; and that she had crying episodes, a decrease in motivation, and feelings of hopelessness, helplessness, sadness, tenseness, concerns about physical problems, temper outbursts, feeling discouraged, boredom, fatigue, irritability and nervousness. Upon examination, Griffin's mood was dysphoric (general dissatisfaction, restlessness, depression and anxiety), but her sensorium, cognition and concentration were intact. Her memory was fair and her judgment and insight were assessed as "poor."

Griffin continued with treatment for her back pain, but also began to see a psychiatrist in January 2016. The records associated with her mental impairment reveal that her worsening

depression was linked to her continued back pain. On January 25, 2016, at her first visit with Dr. John Hsieh (a psychiatrist), Griffin reported that she was very depressed, and had been feeling worse because of her back injury and her financial situation (Tr. 1292-1301; 1503-1513). She was crying, and feeling overwhelmed. Upon mental status exam, Dr. Hsieh found Griffin to be cooperative, with a normal rate and tone of speech, and linear thought processes. Her mood/affect was depressed, her attention span and concentration was fair, her fund of knowledge was average, her abstract reasoning was fair, and she had fair insight and judgment. Dr. Hsish diagnosed Griffin with a "severe single episode of major depressive disorder," assessed her a GAF (Global Assessment of Functioning") of 50,[2] and increased her dosage of Effexor. At a follow-up with Dr. Hseih on February 22, 2016, Griffin reported that she felt essentially the same, with only some initial improvement with the increased Effexor dose (Tr. 1307-1308; 1494-1503). In June 2016, Griffin again reported to Dr. Hsieh that she was about the same despite taking both Effexor and Cymbalta. (Tr. 1310-1316; 1471-1478). Dr. Hsieh referred Griffin for anger and irritability management.

At behavioral health counseling on September 21, 2016, which had been ordered by Dr. Hsieh as well as Griffin's primary care physician, Griffin's current symptoms were depression including a dysphoric mood, a diminished loss of interest, sleep disturbance, loss of energy, change

---

[2] The Global Assessment of Function ("GAF") scale is used to rate an individual's "overall psychological functioning." AMERICAN PSYCHIATRIC INSTITUTE, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") 32 (4th ed. 1994). The scale assigns a numeric range from "1" (persistent danger of severely hurting self or others') to "100" ("superior functioning with no symptoms that impair functioning").The GAF scoring system no longer appears in the latest edition of the DSM. A GAF score in the range of 60 to 51indicates "moderate symptoms, such as occasional panic attacks, or some difficulty in building meaningful social relationships." A next range, 50 to 41 indicates "serious symptoms, such as suicidal thoughts or severe, obsessive rituals. The person could also have severe impairment in work, such as being unable to keep a job."

in appetite, poor concentration, and low self esteem (Tr. 1448-1454). Griffin presented to that psychotherapy evaluation adequately groomed and with good hygiene. She was pleasant, calm, cooperative, and attentive. Her speech was spontaneous, with both normal rate and volume. Her affect was tearful and her mood was depressed, but her insight/judgment was good, her thought processing was linear and goal directed, she was having no audio/visual hallucinations, no paranoid ideations or delusions, and her cognitive functions were intact. She was diagnosed with major depressive disorder - moderate to severe, assessed a GAF of 53, and advised to begin individual therapy to work on her coping skills.

In November 2016, when she saw Dr. Hseih again, Griffin reported that she was not doing well and had a decrease in motivation (1427-1439). Dr. Hsieh found her in distress, with a normal rate and tone of speech, a depressed, tearful, and dysthymic mood/affect, linear thought processes, and fair attention/concentration, fair abstract reasoning, and fair insight/judgment. Dr. Hsieh assessed a GAF of 50, and prescribed Cymbalta.

From that visit through mid-2018, Griffin's medical records consist primarily of treatment for her physical conditions, including her newly diagnosed chronic obstructive pulmonary disease. It was not until May 2018, that she was seen again for her mental impairment(s) (Tr. 1729-1730). On May 11, 2018, Griffin reported to Sharon Smith (a behavioral counselor) that she had been having racing thoughts, her medication was not working, she felt sad, "like screaming," she wanted to throw things, and had some suicidal thoughts and lots of anger. Upon examination, Griffin was well groomed, cooperative, and forthcoming, with good eye contact. She had no abnormal movements, a full range affect, an euthymic mood, a normal rate, rhythm and volume of speech, intact cognition, and good insight, judgment and impulse control.

The ALJ's determination that Griffin had only mild limitations in the area of "understanding, remembering, or applying information," mild limitations in the area of "interacting with others," and mild limitations in the area of "concentrating, persisting, or maintaining pace," is contrary to the "fair" assessments from the October 2015 evaluation mentioned and relied upon by the ALJ in his step two analysis. A "fair" assessment is, according to the regulations, akin to moderate limitations. Moreover, it was not just the October 2015 evaluation that contained such "fair" assessments; those were contained in Dr. Hsieh's notes throughout 2016. It is only in the assessment from May 2018 that all of the mental status examination elements were found to be good and/or normal. That May 2018 assessment by Sharon Smith may support a conclusion that Griffin's depression was not severe in 2018, but it does not constitute substantial evidence to support the ALJ's determination that Griffin's depression was not severe from her alleged onset date (September 30, 2014), through the date of the ALJ's July 2, 2018, decision. In particular, there is no evidence, much less substantial evidence, that Griffin's depression was not severe in late 2015, through 2016.

The determination that the ALJ's severity determination relative to Griffin's depression at step two is not supported by substantial evidence does not end the inquiry. Generally, where there is an error at step two, but the ALJ progresses beyond step two and develops an RFC that encompasses all of the claimant's impairments – those that are severe and those that are non-severe– the error is considered harmless. *See e.g., Gibbons v. Colvin*, No. 3:12–CV–0427–BH, 2013 WL 1293902 *16 (N.D.Tex.2013) (any error at step two in assessing the claimant's mental impairment was harmless); *Reliford v. Colvin*, No. H–12–1850, 2013 WL 1787650 *13 (S.D.Tex.2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis");

14

*Garcia v. Astrue*, No. M.–08–264, 2012 WL 13716 (S.D.Tex.2012) (even if the ALJ erred at step two in failing to address the severity of the claimant's right leg venous thrombosis, that error was harmless because the ALJ considered all the claimant's limitations in determining his RFC, and decided the case at step five). Here, while the ALJ did progress beyond step two, he did not include *any* mental limitations in the RFC he formulated that would account for or accommodate Griffin's depression, whether it was severe or not. Instead, the ALJ specifically did not include any mental limitations, and stated, as part of the RFC, that Griffin did not have a severe mental impairment (Tr. 22). Insofar as the ALJ erred by not considering Griffin's depression to be a severe impairment at step two, he also erred by failing to make any accommodation in the RFC for Griffin's depression. *See Loza*, 219 F.3d at 393 ("In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If the ALJ finds a medically severe combination of impairments, 'the combined impact of the impairments will be considered throughout the disability determination process.' ") (internal citations omitted). That error was not harmless. *See e.g., Patel v. Berryhill*, No. 4:16-CV-02066, 2017 WL 4155463, at *3 (S.D. Tex. Sept. 19, 2017)(ALJ did not commit harmless error when he determined plaintiff's medically determinable mental impairments of depression and anxiety were not severe; this error led to the failure to include any mental limitations in the residual-functional-capacity assessment, which in turn, led directly to the conclusion that plaintiff could perform his past relevant work); *Corbitt v. Comm'r of Soc. Sec. Admin.*, No. 3:10-10-CV-558-CWR-LRA, 2013 WL 603896, at *5-6 (S.D.Miss. Feb.19, 2013)(remanding case where the "ALJ's decision showed] that he did not seriously consider

the specific problems" that the claimant's "diabetes create[d]" either at step two or "in the remainder of the five-step evaluation process to justify a finding of harmless error"),

The Commissioner argues in the Response Brief, that the "unskilled" work the ALJ found Griffin could do sufficiently accounted for any depression, whether it was severe or not severe. *See* Commissioner's Response (Document No. 20 at 2) ("Plaintiff's contention overlooks that the ALJ sufficiently accounted for Plaintiff's non-severe mental impairments by limiting her to unskilled work."). The problem with that argument is that it is *ad hoc*; nowhere in the ALJ's decision is there any mention of any work-related limitation being based on Griffin's depression, and it the ALJ's decision, not the Commissioner's post-decision rationales, that are reviewed under § 405g. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("[t]he ALJ's decision must stand or fall with the reasons set forth in the decision, as adopted by the Appeals Council."); *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002)("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). Moreover, a mere limitation to unskilled work, which involves following simple instructions and making simple decisions, 20 C.F.R. §§ 404.1568(a), 416.968(a), does not have any relation to a claimant's ability to interact with the public, which, in this case, is significant given that at least two of the jobs identified by the ALJ at step five have some component of public contact. *See* Dictionary of Occupational Titles 249.366-010 (counter clerk) and 915.473-010 (parking lot attendant).

In all, the ALJ's error at step two, and his unsupported determination that Griffin's depression was not severe, clouded his step five determination insofar as no mental limitations were included in the RFC. That step two error was, consequently, not harmless. Remand for further

development and consideration is warranted.[3]

## VI. Conclusion and Order

Based on the foregoing, and the conclusion that the ALJ erred at step two in his assessment of Griffin's mental impairment(s), and that the step two error was not harmless given that no consideration was included in the residual functional capacity assessment of any mental limitation(s), it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 16) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 17) is DENIED, and this matter is REMANDED to the Commissioner, pursuant to sentence four of § 405g, for further consideration.

Signed at Houston, Texas, this 24th day of February, 2021.

Frances H. Stacy
United States Magistrate Judge

---

[3] Griffin also creditably argues that the RFC is flawed because the only limitations related to, or viewed as accommodations for, Griffin's COPD, are the exertional limitations. There are no environmental limitations (exposure to dust, chemicals, etc) in the RFC, despite the fact that such environmental limitations are generally included for those who have pulmonary impairments such as Griffin.